IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 3 0 2010

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

TOMMY COX, ET AL.,                    §
                                      §
              Plaintiffs,             §
                                      §
VS.                                   §   NO. 4:10-CV-109-A
                                      §
THE CITY OF FORT WORTH, TEXAS,        §
ET AL.,                               §
                                      §
              Defendants.             §

MEMORANDUM OPINION
and
ORDER

Now before the court for consideration are motions for

summary judgment, filed in the above action by defendants, City

of Fort Worth, Texas ("City"), Patrick Moore ("Moore"), and Texas

Health Harris Methodist Hospital Fort Worth ("Texas Health"), as

to all claims and causes of action brought against them by

plaintiffs, Tommy Cox ("Tommy") and Caitlin Cox ("Caitlin").

Also before the court is the motion to dismiss state law claims

against Moore, filed by City.  Having considered all of the

parties' filings, the entire record in this case, and the

applicable legal standards, the court concludes that the motions

for summary judgment of City and Texas Health, and City's motion

to dismiss, should be granted, and that Moore's motion for

summary judgment should be granted in part and denied in part.

I.

## Nature of the Action

Plaintiffs initiated this action by the filing on January 25, 2010, of a petition in the state district court of Tarrant County, Texas. City removed the action to this court on February 17, 2010.[1] In the third amended complaint, plaintiffs bring claims against Moore for negligence and assault and battery, claims against Moore and City pursuant to 42 U.S.C. § 1983, claims under the Texas Tort Claims Act, and claims against Texas Health for negligent hiring, supervision, and retention, for negligent implementation and enforcement of hospital policies, and also on the grounds that Texas Health is vicariously liable for the actions of Moore.

II.

## The Motion to Dismiss and Motions for Summary Judgment

City seeks dismissal of the state law claims against Moore pursuant to the Texas Tort Claims Act, found in section 101.106(e) of the Texas Civil Practice and Remedies Code. City further seeks summary judgment as to all plaintiffs' claims and causes of action against it on the grounds that plaintiffs cannot

---

[1]The other defendants at the time of removal also consented to the removal. Since City's removal, plaintiffs have filed two amended complaints by which they have added or omitted parties.

succeed on their claims pursuant to § 1983 because they cannot demonstrate that City had a policy or custom that caused a deprivation of their constitutional rights; City's training policy is adequate; and plaintiffs' state law claims are barred by sovereign immunity.

Moore argues for summary judgment on the grounds that plaintiffs' claims pursuant to § 1983 are barred by limitations, that he is entitled to qualified immunity and/or official immunity, and that all state law claims against him should be dismissed by the granting of City's motion to dismiss.

Texas Health contends that the court should grant summary judgment because it is not vicariously liable for Moore's actions, as he was acting in his official capacity as a Fort Worth police officer at the time of the events in question; it is not liable under plaintiffs' negligent hiring, supervision, and retention claim because there is no evidence it did not exercise reasonable care when it hired Moore, and the hiring of Moore was not the proximate cause of plaintiffs' injuries; and it is not liable under plaintiffs' negligent implementation and enforcement claim because it owed no duty to plaintiffs with respect to implementation of its visitation policy, and that policy was not the proximate cause of plaintiffs' alleged injuries.

## Undisputed and Disputed Facts

A. <u>Undisputed Facts</u>[2]

Tommy is Caitlin's father. On January 27, 2008, Tommy's mother, Linda Gayle ("Gayle"), was taken to the emergency department at Texas Health. Caitlin was with her grandmother, and Tommy arrived shortly thereafter. Other family members arrived over a period of time until there were five visitors in Gayle's room. At some point, Caitlin's cousin, James Randal Stewart ("Stewart"), arrived at the hospital, and Caitlin proceeded to the entrance of the emergency department to show Stewart the way to Gayle's room.

Stewart and Caitlin passed by the security desk on their way to Gayle's room. Neither Stewart nor Caitlin identified themselves or otherwise checked in at the security desk. Texas Health security officer Michael Rivera ("Rivera") asked Stewart to stop and identify himself before proceeding further into the emergency department. Stewart refused. The confrontation between Rivera and Stewart escalated into a physical altercation.

---

[2]The facts are taken from the parties' Joint Pretrial Order.

Caitlin left the scene of the altercation and returned to
Gayle's room to inform the other family members of events
transpiring with Stewart.  Meanwhile, Moore, who was working as
an off-duty private security officer for Texas Health that day,
responded to a call about the altercation between Stewart and
Rivera.  When Moore arrived in the area of the altercation, a
crowd had gathered as Rivera attempted to place Stewart under
arrest, and Moore provided crowd control during this time.  Moore
was wearing his official City police uniform.

Tommy, Caitlin, and Tommy's sister, Paula, all returned to
the area of the altercation, at which time Moore instructed
Caitlin to leave.  Caitlin then attempted to return to her
grandmother's room.

B.    Disputed Facts

What happened next is in dispute and forms the basis of
plaintiffs' claims against the defendants.  Although the facts
are in dispute, the court will briefly summarize the parties'
versions of events to provide context for the remainder of this
memorandum opinion.

Plaintiffs' version: When Caitlin tried to return to her
grandmother's room, Moore grabbed her by her hair, pulled her to
the ground, and punched her in the face as she fell.  Moore then

grabbed Caitlin by her leg and began dragging her down the hall toward the emergency department entrance.[3] Caitlin claims she never cursed or yelled at Moore or any hospital personnel, never made contact with or attempted to push past hospital personnel, did not touch Rivera, and generally did nothing to aggravate the situation. After Moore released Caitlin, hospital personnel directed she and Tommy to another room off the emergency department, where hospital staff tended to Caitlin.

Moore then burst through the door and began berating Caitlin. When Tommy questioned Moore about why he hit a minor, Moore, without provocation, hit Tommy in the chest, causing Tommy to drop a large cup of water. Moore then punched Tommy in the chest again, causing Tommy to go down to one knee. Moore then hit Tommy on the back of the head with his baton, and choked Tommy from behind with the baton. Tommy did nothing to provoke these actions.

Moore's version: When Caitlin attempted to return to Gayle's room, the charge nurse blocked her way; however, Caitlin pushed the nurse. Moore then grabbed Caitlin's shoulder, which caused her to fall. In an attempt to break the fall, Moore

---

[3]It is undisputed that Moore pulled Caitlin down the hall. How and why this occurred are in dispute.

grabbed her hair. After hitting the ground, Caitlin began kicking Moore, so he grabbed her pant leg and started pulling her away from the crowd. An unidentified male then swung at Moore's hand but hit Caitlin's mouth instead. As Moore was attempting to explain to Tommy what had happened, Tommy threw a large cup of water on Moore. Tommy then advanced towards Moore with a raised fist and attempted to strike Moore. Moore gave Tommy three knee strikes to the left thigh; however, Tommy again attempted to strike Moore, whereupon Moore struck Tommy with his fist on the left side of Tommy's body. Moore then went behind Tommy and locked his arms around Tommy with his baton and pulled him back in an effort to restrain Tommy. Tommy then fell backwards and struck his head on a door frame.

IV.

The Motion to Dismiss

City seeks dismissal of the state-law claims against Moore pursuant to the Texas Tort Claims Act, section 101.106(e) of the Texas Civil Practice and Remedies Code, which provides:

> (e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

Tex. Civ. Prac. & Rem. Code § 101.106(e) (West 2005). City

contends that because plaintiffs have alleged state law claims against both City and Moore, § 101.106(e) requires dismissal of those claims as to Moore.

In construing section 101.106, the Texas Supreme Court concluded that the purpose of revisions to that section

> was to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable . . . .

<u>Mission Consol. Indep. Sch. Dist. v. Garcia</u>, 253 S.W.3d 653, 657 (Tex. 2008) (internal citations and footnote omitted). The statute's purpose is clear: the plaintiff may sue the governmental entity or its employees for alleged conduct, but not both. Plaintiffs now attempt to avoid the effect of section 101.106(e) by contending their state law claims are brought against Moore solely in his personal or private capacity. Plaintiffs concede that to the extent their intentional tort claims are alleged against Moore as an employee of City, those claims should proceed against City only.

The court finds plaintiffs' post-hoc attempts to differentiate their tort claims between Moore and City to be too little, too late. If plaintiffs did not intend to seek recovery from City as to their tort claims, they failed to pay heed to the

admonishment of the Texas Supreme Court in Garcia that:

> [b]ecause the decision regarding whom to sue has irrevocable consequences, a plaintiff must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually.

Id. Plaintiffs' belated contention that their state law claims apply only to Moore individually are insufficient to defeat application of section 101.106(e). See id.; see also Texas Bay Cherry Hill, L.P. v. City of Fort Worth, 257 S.W.3d 379, 401 (Tex. App.--Fort Worth 2008, no pet.) ("[A] suit under the Tort Claims Act against a governmental unit bars a same-subject-matter suit against an employee in both the employee's official and individual capacities.").

V.

## Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial responsibility of showing that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can make this

showing by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

Once the movant has carried its burden under Rule 56(a), the non-moving party may no longer rely on the allegations of its pleadings but must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see Fed. R. Civ. P. 56(c) ("[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the non-moving party as to each of the challenged elements, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Inc. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).

VI.

Analysis

A.    Claims Against City

As an initial matter pertaining to City's motion, the

10

parties disagree on whether Moore was acting in his capacity as a
City police officer, or in his capacity as an employee of Texas
Health.  Resolution of this issue is unnecessary for
consideration of City's motion.

    1.   <u>Claims Pursuant to § 1983</u>

A municipality may be liable under § 1983 only for its own
unconstitutional or illegal policies, and not for the tortious
acts of its employees under a respondeat superior theory.  <u>Monell
v. Dep't of Soc. Serv. of New York</u>, 436 U.S. 658, 690-91 (1978).
Thus, to hold a municipality liable under § 1983 for the acts of
its employees, a plaintiff must initially allege that "an
official policy or custom was a cause in fact of the deprivation
of rights inflicted."  <u>Spiller v. City of Texas City, Police
Dept.</u>, 130 F.3d 162, 167 (5th Cir. 1997) (internal citations and
quotation marks omitted).  To satisfy the "cause in fact"
requirement, a plaintiff must allege that "the custom or policy
served as the moving force behind the [constitutional] violation"
at issue, or that the alleged harm resulted from the execution of
an official policy or custom.  <u>Id.</u> (internal citations omitted).
Municipal liability pursuant to § 1983 thus requires proof of a
policymaker, an official policy, and a violation of
constitutional rights whose "moving force" is the policy or

custom.  <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001).  "The unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability."  <u>Id.</u> (footnote and internal citations omitted).

Here, City has provided summary judgment evidence of written directives promulgated by City's police department that expressly prohibit the use of excessive force.  City's summary judgment evidence additionally shows that it has established a "Continuum of Force" to assist officers in the decision to use force.  The evidence further shows that City trains all officers on its policies concerning use of force, and subjects to discipline officers found to have violated those policies.

Plaintiffs, conversely, have adduced no summary judgment evidence that City had a policy or custom that caused a deprivation of plaintiffs' federal constitutional rights, or that any training policy of City was inadequate, or that there was any policy or custom of City that would have encouraged or found acceptable conduct of the kind plaintiffs allege in their complaint against Moore.  Nor have plaintiffs identified an official policymaker who could be held responsible for enforcing

12

a policy that caused plaintiffs' injuries. Accordingly, summary judgment is warranted as to plaintiffs' § 1983 claims against City.

2. State Law Claims

Plaintiffs' state law claims against City are barred by sovereign immunity. Under the doctrine of sovereign immunity, a city cannot be held liable for the actions of its employees unless a constitutional or statutory provision waives the city's sovereign immunity in clear and unambiguous language. See Univ. of Tex. Med. Branch v. York, 871 S.W.2d 175, 177 (Tex. 1994); Duhart v. State, 610 S.W.2d 740, 742 (Tex. 1980). The Texas Tort Claims Act provides such a waiver in certain circumstances. See Tex. Civ. Prac. & Rem. Code § 101.025 (stating that "[s]overeign immunity to suit is waived and abolished to the extent of liability created by this chapter"); York, 871 S.W.2d at 177. "This provision shields municipalities from suits arising out of intentional torts committed by governmental employees and should be liberally construed to accomplish this objective." Gillum v. City of Kerrville, 3 F.3d 117, 123 (5th Cir. 1993) (internal citations omitted).

The Act does not waive immunity with respect to claims "arising out of assault, battery, false imprisonment, or any

13

other intentional tort." Tex. Civ. Prac. & Rem. Code § 101.057;
see Goodman v. Harris Cty., 571 F.3d 388, 394 (5th Cir. 2009).
The Act also excludes "allegations against a governmental unit
arising out of the same conduct that formed the basis of the
intentional tort claims against its employee." Goodman, 571 F.3d
at 394 (internal citations omitted); Tex. Dep't of Pub. Safety v.
Petta, 44 S.W.3d 575, 580 (Tex. 2001) (rejecting as excluded by
Tort Claims Act plaintiff's negligence claims arising from the
same conduct forming the basis of assault and battery claims);
City of Waco v. Williams, 209 S.W.3d 216, 223-24 (Tex. App.--Waco
2006, pet. denied) (same). Even where a plaintiff labels his
claim as "negligence," that claim will still be barred if the
label is merely a fiction or arises out of an intentional tort.
See, e.g., McCord v. Mem'l Med. Ctr. Hosp., 750 S.W.2d 362, 363
(Tex. App.--Corpus Christi 1988, no writ); see also, e.g.,
Holland v. City of Houston, 41 F. Supp. 2d 678, 713 (S.D. Tex.
1999); Huong v. City of Port Arthur, 961 F. Supp. 1003, 1008-9
(E.D. Tex. 1997).

Here, all of plaintiffs' claims arise from the same set of
facts--the alleged acts of Moore on January 27, 2008. Thus,
plaintiffs' negligence claims arise from the same conduct that
forms the basis of their assault claims. Because plaintiffs'

allegations of assault are barred by section 101.057's exclusion of claims arising out of intentional torts, their negligence claims are barred as well.  See Morgan v. City of Alvin, 175 S.W.3d 408, 418-19 (Tex. App.--Houston [1st Dist.] 2004, no pet.) (plaintiff's negligence claim really an intentional tort barred by the Tort Claims Act, where allegations that police officer "assaulted [plaintiff] by using unnecessary force, dragging [plaintiff] out of the laundromat, slamming [plaintiff's] head against the hood of an unmarked police car, and 'smashing his person' to the gravel parking lot" formed basis of plaintiff's assault and negligence claims); McCord, 750 S.W.2d at 363 (use of nightstick by security guard to beat plaintiff was an intentional tort not within the waiver provisions of the Tort Claims Act).

Plaintiffs rely heavily on Bridges v. Robinson, 20 S.W.3d 104 (Tex. App.--Houston [14th Dist.] 2000, no pet.), disapproved on other grounds by Telthorster v. Tennell, 92 S.W.3d 457, 464 (Tex. 2002), and Durbin v. City of Winnsboro, 135 S.W.3d 317 (Tex. App.--Texarkana 2004, pet. denied), for the proposition that the difference between negligence and intentional torts is the defendant's intent to inflict injury.  However, as explained by the court in Durbin, in many cases, "the intent to injure can be inferred from the acts alleged, e.g., a rape or a physical

beating." Durbin, 135 S.W.3d at 325. Thus, for example, in Durbin, where the plaintiffs alleged only that the officer "purposefully bumped [the decedent's] motorcycle to end the pursuit," the court found the allegations insufficient to allege an intent to cause injury. Id.

Relying on Durbin, plaintiffs here contend that "there is no allegation in [the] Third Amended Complaint . . . that Moore intended to cause injury to Plaintiffs." Pls.' Br. in Supp. of Resp. to City's Mot. for Summ. J. at 13. This statement is disingenuous, at best. The third amended complaint alleges that Moore "grabbed [Caitlin] by her hair," "threw her to the ground by her hair while hitting her in the face," "grabbed [Caitlin] by her leg," and "dragged her down the hallway." Third Am. Compl. at 3. As to Tommy, plaintiffs allege that Moore "approached [Tommy] and punched him twice in the chest," then "punched him twice more in the chest, punched him in the face, and hit him in the back of his head with an asp or baton." Id. at 4. These factual allegations can only be interpreted as alleging that Moore intended to injure plaintiffs. See, e.g., Petta, 44 S.W.3d at 580 (allegations that officer hit plaintiff's car window, aimed his gun at her, blocked her with his police cruiser, and fired at her tires, alleged intentional conduct); Morgan, 175

S.W.3d at 418 (allegations that police officer used unnecessary force, dragged plaintiff out of a laundromat, slammed his head against the hood of a car, and smashed him to the ground, alleged intentional acts). From whatever angle plaintiffs' claims are viewed, they have alleged intentional torts against City that are barred by sovereign immunity.

B.    Claims Against Moore

Moore contends that plaintiffs' claims against him pursuant to 42 U.S.C. § 1983 are barred by limitations. Because there is no federal statute of limitations for claims pursuant to § 1983, the court applies the forum state's personal injury limitations period, which in Texas is two years. Piotrowski, 237 F.3d at 576. Although Texas's two-year limitations period applies, federal law determines when a claim pursuant to § 1983 accrues. Id. Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury that forms the basis of his action. Id.

Here, it is undisputed that the incidents forming the basis of plaintiffs' claims occurred January 27, 2008, and that plaintiffs knew of their injuries as of that date. Thus, limitations bars any claims pursuant to § 1983 brought after January 27, 2010. Although plaintiffs initially filed this

17

action in Tarrant County district court on January 25, 2010, Moore was not added as a defendant until March 21, 2010--two months beyond the limitations period. Limitations would thus appear to bar plaintiffs' § 1983 claims against Moore.

While conceding that limitations would ordinarily bar their claims, plaintiffs allege that the doctrine of fraudulent concealment tolls limitations. Fraudulent concealment "tolls the statute until the fraud is discovered or could have been discovered with reasonable diligence." <u>Velsicol Chem. Corp. v. Winograd</u>, 956 S.W.2d 529, 531 (Tex. 1997). The doctrine comes into play where a defendant has a duty to make a disclosure but "fraudulently conceals the existence of a cause of action from the one to whom it belongs." <u>Nichols v. Smith</u>, 507 S.W.2d 518, 519 (Tex. 1974).

Plaintiffs allege that following their open records request to City seeking information about the incident and "Officer P. Moore," City responded with 398 pages of documents pertaining primarily to Officer Perry Moore, with only a few pages referring to Patrick Moore. Plaintiffs claim City thus fraudulently concealed the true identity of Moore, and, reasonably believing Perry Moore was the officer involved in the incident in January 2008, they named him as a defendant in their initial state court

petition. Not only do plaintiffs fail to cite authority for the proposition that fraudulent conduct by one defendant tolls limitations as to another defendant, they also misapprehend the nature of fraudulent concealment.

Under Texas law, fraudulent concealment that tolls limitations pertains to concealment of a cause of action, not concealment by a defendant of his identity. Baxter v. Gardere Wynne Sewell LLP, 182 S.W.3d 460, 464 (Tex. App.--Dallas 2006, pet. denied); Otis v. Scientific Atlanta, Inc., 612 S.W.2d 665, 666-67 (Tex. Civ. App.--Dallas 1981, writ refused n.r.e.). Likewise, the discovery rule, mentioned in a footnote in the third amended complaint, delays accrual of limitations until a plaintiff knew or should have known of his or her injury, whether or not the plaintiff knows the identity of the alleged wrongdoer. Childs v. Haussecker, 974 S.W.2d 31, 40 (Tex. 1998); Baxter, 182 S.W.3d at 463.

Regardless of any tolling theory alleged, Tommy's testimony dispels any notion that plaintiffs were unaware of Moore's true identity as of the date they filed suit. In his deposition, Tommy testified that on January 27, 2008:

> A. -- and then Pat Moore came through that same door or from that same area, wherever he came from, and blurted out his name was Pat Moore and he could have my

name all day long.

Pls.' App. at 427. It is thus evident that plaintiffs, or at least Tommy, knew as of January 27, 2008, that Patrick Moore was the officer involved in the incident at Texas Health. Because plaintiffs failed to bring their claims against Moore within the two-year limitations period, the § 1983 claims are time barred, at least as to Tommy.

Caitlin's § 1983 claims against Moore cannot be resolved, however, without consideration of section 16.001(b) of the Texas Civil Practice & Remedies Code, which provides:

> (a) For the purposes of this subchapter, a person is under a legal disability if the person is:
>
> (1) younger than 18 years of age, regardless of whether the person is married;

. . . .

> (b) If a person entitled to bring a personal action is under a legal disability when the cause of action accrues, the time of the disability is not included in a limitations period.

According to the summary judgment evidence, Caitlin was a minor at the time of the alleged incident on January 27, 2008, only turning eighteen on November 30, 2008. Caitlin's claims against Moore pursuant to § 1983 were thus tolled until she turned eighteen. See Weiner v. Wasson, 900 S.W.2d 316, 321 (Tex.

1995); cf. Cox v. McDonnell-Douglas Corp., 665 F.2d 566, 572 (5th Cir. 1982) (considering previous statutory provision).

Moore contends that Caitlin's claims are nonetheless barred by her failure to plead an exception to the statute of limitations. Moore has provided no authority for this proposition, and the court has found none. Thus, Caitlin's claims, brought within two years of the date her disability ended, are timely filed.

Moore also maintains that he is entitled to qualified immunity and/or official immunity as to Caitlin's § 1983 claims against him. Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 818 (2009) (holding that the sequence of the two-step inquiry for qualified immunity analysis is no longer mandatory).

In the instant action, Caitlin alleged claims against Moore for excessive force in violation of her Fourth Amendment rights. To prevail on such a claim requires Caitlin to show: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009) (internal citations omitted). Evaluating an excessive-force claim is necessarily fact-intensive, and requires consideration of the facts and circumstances of each case. Id. (citing Graham v. Connor, 490 U.S. 386, 396 (1989)).

Caitlin alleges that after Moore ordered her to leave the emergency room, she attempted to comply by leaving to return to her grandmother's room. As she did so, Moore allegedly grabbed her by her hair, threw her to the ground, hit her in the face, grabbed her by her leg, and dragged her down the hall. Caitlin

has sufficiently alleged the elements of a claim of excessive force. Further, there is no question that as of January 27, 2008, the right to be free from excessive force was a clearly established constitutional right. <u>Deville</u>, 567 F.3d at 169.

In attempting to establish his right to qualified immunity, Moore relies only on his own version of the events that transpired at the hospital. However, at the summary judgment stage, the court is unable to disregard Caitlin's evidence or credit Moore's. The court must deny summary judgment "if there are underlying historical facts in dispute that are material to the resolution of the questions whether the defendants acted in an objectively reasonable manner." <u>Mangieri v. Clifton</u>, 29 F.3d 1012, 1016 (5th Cir. 1994) (internal quotation marks and citations omitted); <u>Tarver v. City of Edna</u>, 410 F.3d 745 (5th Cir. 2005) (same).

The same result follows for Moore's claim of official immunity, an affirmative defense which, under Texas law, imposes on the defendant the burden to establish every element thereof. <u>City of Lancaster v. Chambers</u>, 883 S.W.2d 650, 653 (Tex. 1994). Under Texas law, entitlement to official immunity requires Moore to prove that he was: (1) performing a discretionary duty, (2) in good faith, and (3) acting within the scope of his authority.

Id.  "If any element is not proved as a matter of law or is factually disputed," summary judgment must be denied.  Bridges, 20 S.W.3d at 111.  As most of the facts upon which Moore relies in claiming official immunity are in dispute, official immunity is denied.

C.   Claims Against Texas Health

     1.   No Vicarious Liability

     Plaintiffs maintain that Texas Health is vicariously liable for damages caused by Moore, as Moore was acting within the course and scope of his employment with Texas Health at the time the alleged acts occurred.  Texas Health disputes plaintiffs' characterization that Moore was acting as its employee and instead argues that Moore was at all relevant times acting in his official capacity as a police officer.

     The doctrine of respondeat superior imposes liability on an employer for the tortious acts of its employee when the employee's negligence, while acting within the course and scope of his employment, is the proximate cause of injury to another. Mansfield v. C.F. Bent Tree Apartment Ltd., 37 S.W.3d 145, 149 (Tex. App.--Austin 2001, no pet.).

     To determine whether a private employer is vicariously liable for the actions of an off-duty police officer requires

answering the question, "in what capacity was the officer acting at the time he committed the acts for which the complaint is made?" Id. at 150 (citations omitted); Cherqui v. Westheimer St. Festival Corp., 116 S.W.3d 337, 344 (Tex. App.--Houston [14th Dist.] 2003, no pet.). Texas courts have formulated the following general test for answering the question of an officer's status:

> If the officer is performing a public duty, such as the enforcement of general laws, the officer's private employer incurs no vicarious responsibility for that officer's acts, even though the employer may have directed the activities. If the officer was engaged in protecting the employer's property, ejecting trespassers, or enforcing rules and regulations promulgated by the employer, however, the trier of fact decides whether the officer was acting as a public officer or as a servant of the employer.

Mansfield, 37 S.W.3d at 150 (internal citations omitted). For purposes of determining vicarious liability, an off-duty police officer who observes a crime becomes an on-duty officer as a matter of law. Cherqui, 116 S.W.3d at 344; Morgan, 175 S.W.3d at 417. If the off-duty officer was acting as a police officer, no vicarious liability attaches to the private employer.

The summary judgment evidence on this point shows that Fort Worth Police Department General Order 407.01(C)(17), governing off-duty employment, provides that officers working off-duty

> shall provide law enforcement services and enforce
> laws, regulations, and ordinances which they would
> normally be expected to enforce during their normal
> tour of duty. . . . It is forbidden to engage in the
> enforcement of rules promulgated by the employer, i.e.,
> "house rules."

Texas Health App. at 101. Moore testified that when he is working in his off-duty position at Texas Health, his involvement is required only if events occur that are beyond the scope of hospital security's purview, such as an altercation or other breach of the peace, and that he does not enforce hospital rules or policies. Moore further testified that he became involved in the events giving rise to this action only when informed by hospital staff that an altercation was taking place in the hospital's emergency room.

Texas Health's head of security, Reginald Jackson ("Jackson"), testified that the purpose for which the hospital hires off-duty police officers is to provide a police presence on hospital premises, and that their sole capacity is "to serve in the role of a police officer." Id. at 139. Jackson testified that off-duty officers hired by the hospital are not expected to enforce hospital policies and procedures, but are to be utilized only as peace officers in situations that go beyond the authority of hospital security.

It is undisputed that at the time of the events in question, Moore was wearing his Fort Worth police officer's uniform. Although plaintiffs now claim they were unaware that Moore was acting as a police officer, it is also undisputed that the day after the events in question, plaintiffs went to the Fort Worth police department to file a complaint concerning Moore's actions, and that the Internal Affairs Division of the Fort Worth police department conducted an investigation of the alleged incident. See Williams v. Dillard's Dept. Stores Inc., 211 F. App'x 327 (5th Cir. 2006) (determining off-duty officer was acting as police officer when, inter alia, she was wearing her uniform and badge at time of confrontation with plaintiff); Mansfield, 37 S.W.3d at 151 (considering, as additional proof of on-duty status of police officer, that he was investigated and disciplined by the police department for his actions).

After studying the summary judgment evidence, the only conclusion that can be reached is that Moore was acting in his official capacity as a police officer at the time of the incidents in question. Moore became involved with the Cox family due to a breach of the peace--the altercation between Stewart and Rivera. At that moment, his status changed from off-duty to an on-duty officer as a matter of law. Although the court

recognizes, as plaintiffs argue, that the parties' accounts of what happened differ greatly, the court finds none of those factual differences affects the uncontroverted evidence discussed above.[4] Thus, because the court concludes that as a matter of law, Moore was acting in his capacity as a Fort Worth police officer, Texas Health is not vicariously liable for Moore's actions.

### 2. <u>Negligent Hiring, Supervision, and Retention</u>

An employer's liability for negligent hiring, supervision, or retention arises if it hires an incompetent or unfit employee whom the employer knows, or reasonably should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others. <u>Morris v. JTM Materials, Inc.</u>, 78 S.W.3d 28, 49 (Tex. App.--Fort Worth 2002, no pet.); <u>Leake v. Half Price Books, Records, Magazines, Inc.</u>, 918 S.W.2d 559, 563 (Tex. App.--Dallas 1996, no writ). <u>See</u> <u>also</u> <u>Fifth Club, Inc. v. Ramirez</u>, 196 S.W.3d 788, 796 (Tex. 2006).

The court finds no evidence in the record to support any

---

[4]Plaintiffs argue that although Moore may have been acting as an on-duty officer during the incident with Stewart, he reverted back to an off-duty officer by the time he was involved with Tommy and Caitlin. The court finds nothing in the record to indicate that plaintiffs' interactions with Moore were "not part of a continuous sequence of events," beginning with the incident with Stewart and ending with Tommy's injury. <u>See Cherqui v. Westheimer St. Festival Corp.</u>, 116 S.W.3d 337, 346 n.6 (Tex. App.--Houston [14th Dist.] 2003, no pet.).

suggestion that Moore was incompetent or unfit or that Texas Health could have discovered anything of the sort about him. The summary judgment evidence shows that Moore, a police officer since 1982, had worked off-duty at Texas Health since June 30, 1990. During the nearly two decades prior to the incidents of January 27, 2008, the summary evidence shows that Moore had never been the subject of any complaint or disciplinary action. Additionally, Moore's training as a certified peace officer made him "specially suited" to work in his off-duty position at Texas Health. Fifth Club, Inc., 196 S.W.3d at 797.

Plaintiffs have offered no controverting evidence, relying instead on their argument that fact issues remain as to Moore's status at the time of the incidents in question. The court has already resolved that question, however, and can see no reason to revisit it here. Summary judgment is warranted on plaintiffs' negligent hiring, supervision, and retention claim.

3. Negligent Implementation and Enforcement of Hospital Policies

The basis of this claim is that Texas Health owed plaintiffs a duty to "implement and enforce policies and procedures to protect patients and visitors." Third Am. Compl. at 6. Plaintiffs claim that Texas Health allegedly failed to exercise

reasonable care in implementing and enforcing its policy concerning limitations on the number of visitors each emergency room patient was allowed, and that it particularly failed to exercise reasonable care in communicating that information to plaintiffs prior to Stewart's arrival at the hospital.

To prevail on a claim of negligence requires plaintiffs to establish (1) a legal duty owed to them by Texas Health; (2) a breach of that duty; and (3) damages proximately caused by the breach. <u>Greater Houston Transp. Co. v. Phillips</u>, 801 S.W.2d 523, 525 (Tex. 1990). "The threshold inquiry in a negligence case is duty." <u>Id.</u> (internal citations omitted). The existence of a duty is a question of law. <u>Id.</u>

Plaintiffs' negligence claim is based on the premise that a party who voluntarily undertakes a course of action for the benefit of a third party owes a duty to that party to conduct the action reasonably. Because Texas Health voluntarily implemented a flexible visitor policy for the safety of its patients, visitors, and staff, plaintiffs contend they were in the group of intended beneficiaries of the policy, and Texas Health owed them a duty to implement and enforce its policy reasonably.

"A company's internal policies or procedures will not create a negligence duty where none otherwise exists." <u>Cleveland Reg'l</u>

Med. Ctr., L.P. v. Celtic Props., L.C., 323 S.W.3d 322, 351 (Tex. App.--Beaumont 2010, no pet. h.) (in "negligent undertaking" case, holding that provisions in medical center's manual establishing code of conduct failed to create legal duty); Entex, A Div. of Noram Energy Corp. v. Gonzalez, 94 S.W.3d 1, 9-10 (Tex. App.--Houston [14th Dist.] 2002, pet. denied); cf. Owens v. Comerica Bank, 229 S.W.3d 544, 547 (Tex. App.--Dallas 2007, no pet.) ("The Texas Supreme Court has refused to create a standard of care or duty based upon internal policies, and the failure to follow such policies does not give rise to a cause of action in favor of customers or others.") (citing FFE Transp. Servs., Inc. v. Fulgham, 154 S.W.3d 84, 92 (Tex. 2004)).

Plaintiffs' negligence claim, grounded on Texas Health's alleged negligent implementation of its internal policies, thus cannot pass the first hurdle: it fails to allege a legal duty. Having alleged no duty outside of the implementation of Texas Health's own internal policies, plaintiffs' negligence claim fails.

The court concludes that the remaining grounds asserted by Texas Health as the basis for summary judgment on plaintiffs' negligence claim likely have merit. However, as the court finds dispositive the lack of duty, it need not reach those grounds.

## VII.

## Order

Therefore,

The court ORDERS that:

(1) City's motion to dismiss, and motion for summary judgment be, and are hereby, granted, and all claims and causes of action asserted by plaintiffs, Tommy and Caitlin, against City be, and are hereby, dismissed with prejudice;

(2) All state law claims asserted by plaintiffs against Moore be, and are hereby, dismissed with prejudice;

(3) Moore's motion for summary judgment be, and is hereby, granted as to all claims and causes of action asserted by Tommy, and be, and is hereby, denied as to Caitlin's § 1983 claims, and all claims asserted by Tommy against Moore be, and are hereby, dismissed with prejudice; and,

(4) Texas Health's motion for summary judgment be, and is hereby, granted, and all claims and causes of action asserted by plaintiffs against Texas Health be, and are hereby, dismissed with prejudice.

SIGNED December 30, 2010.

_____
JOHN McBRYDE
United States District Judge